IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MARION A. HECHT, as Receiver for | : | |
| Joseph Forte, L.P., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 10-1374 |
| v. | : | |
| | : | |
| MALVERN PREPARATORY SCHOOL, | : | |
| | : | |
| Defendant. | : | |

Diamond, J.                                                                                          August 26, 2010

**MEMORANDUM**

In March 2010, the Receiver supervising the recovery of assets on behalf of investors defrauded by "Ponzi" scheme operator Joseph S. Forte sued Malvern Preparatory School, seeking to recover, *inter alia*, $900,000 in "gifts" that Forte purportedly gave to the School. As alleged by the Receiver, Forte stole these funds from his investor-victims. Remarkably, although Malvern does not dispute that the funds it received from Forte were stolen, it has counterclaimed against the Receiver for breach of contract and promissory estoppel, alleging that: (1) Forte failed to donate additional funds he had pledged to the School; and (2) because Malvern relied to its detriment on Forte's pledge and because the Receiver now stands in Forte's shoes, the Receiver is liable for the promised funds.

To state Malvern's contentions is to demonstrate their utter absurdity. See SEC v. Chenery Corp., 332 U.S. 194, 214 (1947) (Jackson, J., dissenting) ("Now I realize fully what Mark Twain meant when he said, 'The more you explain it, the more I don't understand it.'"). If

1

Malvern believes that Forte owes the School money, it may proceed against him, not the Receiver I appointed to help recover assets on behalf of Forte's victims.

I. **BACKGROUND**

   A. **The Government's Allegations**

On January 7, 2009, the Securities and Exchange Commission and the Commodity Futures Trading Commission filed related actions, charging Forte and his Limited Partnership, Joseph Forte, L.P., with violating numerous securities laws through Forte's operation of a Ponzi scheme from 1995 to 2008.  See SEC v. Forte, Civil No. 09-63, Doc. No. 1; CFTC v. Forte, Civil No. 09-64, Doc. No. 1; see also Cunningham v. Brown, 265 U.S. 1, 13 (1924).  The Agencies based their allegations largely on Forte's admissions and related documents.  See, e.g., Civil No. 09-63, Doc. No. 1 ¶¶ 17, 22, 27.  It now appears that Forte fraudulently solicited and accepted original cash investments of $78.6 million from 125 investors through the sale of securities in the form of limited partnerships.  Forte falsely represented that the investments were earning annual returns of 18% to over 38%, and that as of September 2008, the investments had increased in value to more than $154 million.  Id. ¶¶ 4, 18, 24.  In fact, Forte had made virtually no investments.  Rather, he paid himself and his early investors with monies provided by the Partnership's later investors.  Civil No. 09-64, Doc. No. 1 ¶ 4.  Of the 125 investors, forty-one recovered their full $22.2 million principal payments as well as $8.6 million in "profits."  See Civil No. 09-63, Doc. No. 49, Ex. 2.  Eighty-four investors lost a total of $34.8 million from their original investments of $56.4 million.  Id.

On November 24, 2009, after he pled guilty to wire fraud, mail fraud, bank fraud, and money laundering charges, Forte was sentenced to a term of fifteen years imprisonment. See United States v. Forte, Criminal No. 09-304, Doc. No. 35.

**B.    Procedural History**

On January 7, 2009, the SEC and the CFTC asked me to freeze "any funds or other assets presently held by [Joseph Forte or Forte, L.P.], under their control or over which they exercise actual or apparent investment or other authority, in whatever form such funds or other assets may presently exist and wherever located." Civil No. 09-63, Doc. No. 2 ¶ I; No. 09-64, Doc. No. 2 ¶¶ II-III. Forte did not dispute the Agencies' allegations, and, on September 30, 2009, consented to a permanent injunction and asset freeze. Civil No. 09-63, Doc. No. 34; Civil No. 09-64, Doc. No. 32.

On March 30, 2009, I granted the Agencies' unopposed Motion to appoint Marion A. Hecht as Receiver of the Limited Partnership Estate, and authorized her to retain Lawrence T. Hoyle, Jr. as Counsel. Civil No. 09-63, Doc. No. 26, ¶ II; Civil No. 09-64, Doc. No. 24, ¶ II. The Receiver has submitted two Reports (on August 27, 2009 and March 1, 2010), summarizing the steps she has taken to assume control of the Partnership assets. As of March 1, 2010, the Receiver had collected $359,616 from the sale of the Fortes' household items, the return of some of Forte's charitable donations, and the like. Civil No. 09-63, Doc. No. 49, Ex. 1; Civil No. 09-64, Doc. No. 47, Ex. 1. She had also collected from five limited partners some $547,383 in profits, for a total recovery of $985,103.

### C. The Receiver's Complaint and Malvern's Counterclaim

"Founded in 1842, Malvern is an independent, Catholic school whose mission is to prepare young men 'for college, leadership and for life.'" *(Doc. No. 16 at 12.)* After his son enrolled at the School in September 2003, Forte "began to volunteer a significant amount of his time [to] Malvern's athletic programs." *(Id. at 14.)*

On March 29, 2010, the Receiver filed the instant action -- one of seven Ms. Hecht brought against individuals and entities alleged to have received misappropriated Partnership assets. See Hecht v. Irwin, Civil No. 10-1371; Hecht v. Abraham Lincoln Found. of the Union League of Phila., Civil No. 10-1372; Hecht v. Skee Ball Profit Sharing Plan Participants, Civil No. 10-1373; Hecht v. Forte, Civil No. 10-1375; Hecht v. Crawford, Wilson, & Ryan Profit Sharing Plan Participants, Civil No. 10-1376; Hecht v. Investors Nos. 1102 & 1119, Civil No. 10-1377. The Receiver alleges that Malvern

> received [more than $900,000 in] misappropriated Partnership assets from [Joseph] Forte as purported charitable donations, and . . . also received [more than $200,000 in] Partnership assets from one or more limited partners of the Partnership, including the Thornton D. & Elizabeth S. Hooper Foundation. Malvern Prep has refused the Receiver's request to return the misappropriated funds and other assets that it received from Forte and/or others.

*(Doc. No. 1 ¶ 1.)* Seeking to recover these gifts "for the benefit of [the Partnership's] innocent investors," the Receiver brings three state law claims against Malvern: the first two under the Pennsylvania Uniform Fraudulent Transfer Act, and the third for common law unjust enrichment. *(Id.)* See 12 Pa. C.S. §§ 5101 *et seq*.

On April 29, 2010, Malvern moved to dismiss. *(Doc. No. 8.)* See Fed. R. Civ. P. 12(b)(6). On May 26, 2010, I denied Malvern's Motion, noting that it could "generously be described as meritless." *(Doc. No. 13 at 14.)*

On June 30, 2010, Malvern answered the Complaint and counterclaimed against the Receiver. *(Doc. No. 16.)* Alleging that Forte breached his pledge to donate $1 million to the School for the construction of a new athletic facility, Malvern brings breach of contract and promissory estoppel counterclaims and asks me to "enter judgment in its favor and against Plaintiff, Marion A. Hecht, as Receiver for Joseph Forte, and Joseph Forte, L.P., at least in the amount of $630,000 with said judgment to be used as a setoff and/or recoupment against any sums recoverable by the Receiver . . . against Malvern." *(Doc. No. 16 at 19, 21.)* . *(Id. Counts I and II.)* Malvern also seeks a declaration that any tuition payments Forte made to the School for the education of his son "are incapable of being avoided by the Receiver." *(Id. Count III.)*

On July 30, 2010, the Receiver moved to dismiss Malvern's breach of contract and promissory estoppel counterclaims. *(Doc. No. 17.)* See Fed. R. Civ. P. 12(b)(6). The Receiver has not moved to dismiss Malvern's request for declaratory relief (Count III), as she is not seeking to recover Forte's tuition payments. *(Id. at 5.)*

## II.     LEGAL STANDARDS

In deciding a motion to dismiss, I must accept as true the non-moving party's factual allegations and make all reasonable inferences in the non-moving party's favor. Fed. R. Civ. P. 12(b)(6); In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002). In addition to the Counterclaim itself, I may consider "exhibits attached to the [Counterclaim] and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d

5

Cir. 1993) (citations omitted). The burden is on the moving party to show that the opposing party has failed to allege facts sufficiently detailed to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 1974 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). A counterclaim must "state a claim to relief that is plausible on its face." Phillips, 515 F.3d at 234. "The inquiry is not whether [the counter-claimants] will ultimately prevail on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller, 311 F.3d at 215.

## III.   DISCUSSION

One may bring a counterclaim only against an "opposing party." See Fed. R. Civ. P. 13. "The principal goal of [Rule 13] . . . is to permit the resolution of all controversies between the parties in a single suit." Banco Nacional de Cuba v. Chase Manhattan Bank, 658 F.2d 875, 885 (2d Cir. 1981). As the Third Circuit has explained, courts usually

> interpret[] "opposing party" broadly . . . to give effect to the policy rationale of judicial economy underlying Rule 13. Where parties are functionally equivalent . . . , where an unnamed party controlled the litigation, or where . . . an unnamed party was the alter ego of the named party, they should be treated as opposing parties within the meaning of Rule 13.

Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 391 (3d Cir. 2002).

The Receiver argues that she is not an "opposing party" within the meaning of Rule 13 because Malvern's breach of contract and estoppel claims "are not addressed to Ms. Hecht [in her capacity as Receiver for the Partnership]." *(Doc. No. 17 at 10.)* Rather, "[a]ll of [Malvern's] allegations . . . relate to actions taken by Forte in his personal capacity and consequently give rise to claims against Forte [alone]." *(Id. at 7.)* Malvern responds that the Receiver has alleged that

6

"[u]ntil [her] appointment on March 30, 2009, Forte, as the general partner of the Partnership, completely dominated and controlled the Partnership," just as Ms. Hecht "dominates" it now. *(Doc. No. 1 ¶ 29.)* Malvern thus argues that "the Receiver . . . should be considered an 'opposing party' under the broad interpretation adopted by the Transamerica Court" because "the Partnership and Forte can be, and should be, considered the alter egos of each other." (Doc. No. 19 at 14, 15.)

Malvern's reasoning is the same as that underlying the defense of *in pari delicto* ("of equal fault"). A variant of the unclean hands doctrine, this defense precludes a party to a wrong from seeking redress against another party to that wrong. See Thabault v. Chait, 541 F.3d 512, 526 (3d Cir. 2008). Ponzi scheme participants commonly raise *in pari delicto* to bar a receiver's fraudulent conveyance actions against them. For instance, in Scholes v. Lehmann -- a case quite similar to the instant case -- the SEC brought an enforcement action against a Ponzi scheme operator and the corporations through which he implemented the scheme. 56 F.3d 750 (7th Cir. 1995). At the SEC's request, the district court appointed a receiver who took control of the corporations. The receiver brought a state law fraudulent conveyance claim against several individuals and "five religious corporations" to recover monies they had received through the scheme. Id. at 753. Reasoning -- as Malvern does here -- that the receiver stood in the shoes of the operator, the defendants argued that the doctrine of *in pari delicto* barred the receiver from proceeding against them. Id. at 754. The Seventh Circuit disagreed, explaining that applying *in pari delicto* to claims brought by the receiver would confound the doctrine's purpose:

> [T]he reason [for the *in pari delicto* doctrine], of course, . . . is that the wrongdoer must not be allowed to profit from his wrong by recovering property that he had

7

parted with in order to thwart his creditors. . . . Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated.

Id. at 754 (citations omitted). Other Courts have held similarly. See FDIC v. O'Melveny & Myers, 61 F.3d 17, 19 (9th Cir. 1995) ("While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law."); see also SEC v. Parish, 2008 U.S. Dist. LEXIS 113241, at *22 (D.S.C. May 12, 2008); Goldberg v. Chong, 2007 U.S. Dist. LEXIS 49980, at *29 (S.D. Fla. July 11, 2007); Hays v. Paul, Hastings, Janofsky & Walker LLP, 2006 U.S. Dist. LEXIS 95849, at *32 (N.D. Ga. Sept. 14, 2006); Condus v. Howard Sav. Bank, 1996 U.S. Dist. LEXIS 21991, at *43-45 (D.N.J. June 20, 1996).

These decisions underscore that although Joseph Forte may be an "opposing party" vis-à-vis Malvern, Ms. Hecht is not. Contrary to Malvern's suggestion, Ms. Hecht and Forte are not "functionally identical"; their "functions" could not be more different. *(Doc. No. 19 at 15.)* As alleged by the Receiver, Forte ran the Partnership as a criminal enterprise, repeatedly defrauding his investors, making, *inter alia*, fraudulent transfers from the Partnership to the School. *(Doc. No. 1 ¶ 40.)* Ms. Hecht's "function" is not to run the Partnership, but to maximize any recovery on its behalf and on behalf of Forte's investor victims. See Goetze Corp. of Am. v. MacGill, 1989 U.S. Dist. LEXIS 17888, at *5 (W.D. Mich. Oct. 30, 1989) (in "determining which parties are 'opposing parties'" under Rule 13, courts often look to "the substance of the action"); see also Donell v. Kowell, 533 F.3d 762, 779 (9th Cir. 2008) ("The purpose of [Uniform Fraudulent Transfer Act] is to permit the receiver to collect those assets that can

8

actually be located and recovered in the wake of a Ponzi scheme, and to ratably distribute those assets among all participants, including the many investors who lost everything.").

Malvern's claim that Joseph Forte owes the School $630,000 is properly directed against Forte and Forte alone. It would not, however, "give effect to the policy rationale of judicial economy underlying Rule 13" to allow Malvern to assert that claim against the Receiver, who is certainly not Forte's "functional equivalent" or "alter ego." Transamerica, 292 F.3d at 391; see also Goetze, 1989 U.S. Dist. LEXIS 17888, at *5-6 (W.D. Mich. Oct. 30, 1989) (a defendant may assert a Rule 13 counterclaim only against his "real opponent[] in litigation") (quoting Berger v. Reynolds Metals Co., 39 F.R.D. 313, 315 (E.D. Pa. 1966)).

Accordingly, because Counts I and II of Malvern's Counterclaim are not directed at an "opposing party," they are not cognizable.

## IV. CONCLUSION

For the reasons set forth above, I will grant the Receiver's Motion to Dismiss Malvern's breach of contract and promissory estoppel counterclaims. In closing, I note that this is Malvern's second absolutely baseless claim for relief. See Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1314 (3d Cir. 1994) ("[S]anctions may be awarded to discourage [parties] from bringing baseless actions or making frivolous motions.") (citations and quotation marks omitted); see also Fed. R. Civ. P. 11.

An appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*
_____
**Paul S. Diamond, J.**

9